UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADAM BRUCE PACKER,

    Plaintiff,

v.                                        Case No: 8:22-cv-0930-KKM-SPF

KIMBERLY-CLARK WORLDWIDE,
INC., and COSTCO WHOLESALE
CORPORATION,

    Defendants.
_____

# ORDER

Adam Packer moves to remand this products liability case to state court. (Doc. 21.) He argues that Kimberly-Clark Worldwide, Inc., and Costco Wholesale Corporation fail to establish that the amount in controversy exceeds $75,000. He is incorrect.

## I. BACKGROUND

Adam Packer shops at Costco. Between February 14, 2020, and October 8, 2020, Packer bought Cottonelle Flushable Wipes from a Costco store in Brandon, Florida. (Doc. 1-4 ¶¶ 9, 14–15.) Costco buys the wipes from Kimberly-Clark, who markets them as biodegradable toilet-paper alternatives. (*Id.* ¶ 13.)

Whatever their usual merits, Packer alleges that the wipes he brought home were contaminated with a bacterium. (*Id.* ¶ 16.) After using the wipes, Packer developed a bacterial infection "at the same area in which he used the Flushable Wipes." (*Id.* ¶ 17.) Packer's infection required hospitalization and surgery. (*Id.* ¶ 18.)

Packer sued Costco and Kimberly-Clark for products liability in Florida's Thirteenth Judicial Circuit Court. (Doc. 1-4.) Costco and Kimberly-Clark timely removed to federal court. (Doc. 1.) Their notice of removal claims that the Court has jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. Contesting only the latter point, Packer moves to remand. (Doc. 21.)

## II.   LEGAL STANDARD

United States district courts have diversity jurisdiction if the parties are of diverse citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). In removal cases, "the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 (11th Cir. 2001). The removing party must show, by a preponderance of the evidence, that the amount in controversy is satisfied. *See id.* at 1281 n.5. A "removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). But a "conclusory allegation" that the amount in controversy is satisfied, "without setting forth

the underlying facts supporting such an assertion, is insufficient to meet defendant's burden." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319–20 (11th Cir. 2001).

To evaluate the amount in controversy, a court may look to the documents that the defendant received from the plaintiff, along with the removal attachments. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *Pretka*, 608 F.3d at 755 ("[The] defendant may introduce affidavits, declarations, or other documents showing that the amount in controversy exceeds $75,000."). A court may draw reasonable deductions and inferences from these documents, using "judicial experience and common sense." *Roe v. Michelin N.A., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).

III.   **ANALYSIS**

To prevent remand, Defendants must show that the amount in controversy more likely than not exceeds $75,000, providing "specific factual allegations establishing jurisdiction." *Pretka*, 608 F.3d at 754. Defendants carry that burden.

Defendants put forward a pre-suit letter that Packer sent offering to resolve his claims for $300,000, based on Packer's economic and non-economic injuries. (Doc. 20 at 1 (filed under seal).) The offer fits with the civil cover sheet in state court, where Packer indicated that his claims exceed $100,000. (Doc. 4-1 at 1.)

Looking to Packer's medical expenses and lost wages, the letter precisely calculates his economic injuries at $46,130.17. (Doc. 20 at 2; Doc. 21 at 2.) Because it does not

3

include any expense that Packer incurred after he mailed the letter on October 14, 2021, it is likely that the figure only grew until April 20, 2022, the date of removal. (Doc. 20 at 1.) And there is no doubt that Packer seeks all his medical expenses, both "in the past and in the future." (Doc. 1-4 ¶ 52.) But even if his economic expenses plateaued at $46,130.17, his non-economic injuries need only reach $29,000 to satisfy the amount in controversy.

As explained in the letter, Packer alleges severe non-economic harms. They include Packer's "traumatic surgery" during which "he almost died," the "extreme pain and humiliation" Packer experienced during his four days in the hospital and his at-home recovery, and the ongoing "stress and anxiety" that prompted Packer to visit a psychiatrist. (Doc. 20 at 2–3). All in all, Packer valued his non-economic harms at "a minimum of $500,000." (*Id.* at 3.) Packer's offer to settle his economic *and* non-economic harms for $300,000 suggests that the $500,000 non-economic harm estimate is a high one. But even so, Packer's description of his experience makes it reasonable to conclude that that his non-economic harms are worth at least the $29,000 necessary to exceed the amount in controversy.

Packer resists this conclusion, claiming that his letter's estimates of non-economic damages are unreliable. To be sure, demand letters may "merely reflect puffing and posturing." *Boyd v. State Farm Mut. Auto. Ins. Co.*, No. 6:15-cv-1965, 2015 WL 12838805, at *2 (M.D. Fla. Dec. 16, 2015) (Conway, J.) (citations omitted).

4

Understandably, the letter does not quantify each aspect of non-economic injury. But it roots the $300,000 offer in a level of detail that resists Packer's attempt to brush it aside as simple negotiation tactics. *See id.* (treating a demand letter as reliable when it "provide[d] specific information to support the plaintiff's claim for damages"). And even if $300,000 is high, discounting it by two thirds still yields a number well above the amount in controversy.

No matter, Packer responds: Settlement offers are not admissible evidence under the Federal Rules of Evidence. True, Rule 408 excludes from evidence settlement documents that are offered to prove "the validity or amount of a disputed claim." FED. R. EVID. 408(a). But, as Packer accepts, district courts often look to pre-suit demand letters to determine the amount in controversy. *See, e.g.*, *Stern v. First Liberty Ins. Corp.*, 424 F. Supp. 3d 1264, 1273 (S.D. Fla. 2020) (Bloom, J.) (collecting cases that consider demand letters). So has the Eleventh Circuit. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994); *AAA Abachman Enters., Inc. v. Stanley Steemer Int'l, Inc.*, 268 F. App'x 864, 866 (11th Cir. 2008) (per curiam).

The only circuits to address Packer's argument have rejected it. *See Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006) (Easterbrook, J.); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (per curiam); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). So too here. "Although settlement negotiations are

5

not admissible at trial pursuant to Federal Rule of Evidence 408 to prove liability for or invalidity of the claim or its amount, they can be considered 'to show the stakes' when determining whether the amount in controversy is met." *See Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012) (quoting *Rising-Moore*, 435 F.3d at 816)).

## IV.    CONCLUSION

Packer's estimate of his expenses and detailed description of his pain and suffering allow Defendants to show that the amount in controversy more likely than not exceeds $75,000 without resorting to "conjecture, speculation, or star gazing." *Pretka*, 608 F.3d at 754. Accordingly, Packer's Motion to Remand (Doc. 21) is **DENIED**.

**ORDERED** in Tampa, Florida, on June 13, 2022.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge